UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD RANDOLPH DAYTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF FAIRFIELD, et al.,<br><br>　　　　Defendants. | Case Nos. 2:24-cv-01170-CSK<br><br>　　　　2:23-cv-02362-CSK<br><br>ORDER RE: SUMMARY JUDGMENT MOTIONS<br><br>(ECF Nos. 29, 30) |

Pending before the Court are (1) a motion for summary judgment on all claims in this consolidated action by Plaintiff Edward Randolph Dayton (ECF No. 29); and (2) a cross-motion for summary judgment or, in the alternative, partial summary judgment by Defendants City of Fairfield, Officer Nathan Strickland, Officer Frank Piro, Officer Richard Mroz, Officer Robert Ramirez-Kirgan, Officer Jimmie Williams, and Chief of Police Dan Marshall (ECF No. 30).[1] Plaintiff is appearing without counsel. A hearing was held on May 26, 2026. Plaintiff appeared pro se; Steven A. Nguy appeared as counsel for Defendants. (ECF No. 33.)

---

[1]　This case proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including the entry of judgment, pursuant to the consent of all parties. (ECF Nos. 4, 9, 10.) Case No. 2:24-cv-01170-CSK has been designated as the lead case and is consolidated with Case No. 2:23-cv-02362-CSK, with all documents filed in Case No. 2:24-cv-01170-CSK. (ECF No. 15.)

1

For the reasons that follow, the Court DENIES Plaintiff's motion for summary judgment, and the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment.

## I.   BACKGROUND

### A.   Factual Background

Where the parties agree a fact is undisputed, the court cites to Defendants' response to Plaintiff's statement of undisputed facts ("Pl. SUF") (ECF No. 30-3), or to Plaintiff's response to Defendants' statement of undisputed facts ("Defs. SUF") (ECF No. 37).

#### 1.   Plaintiff's October 18, 2022 Arrest

On October 18, 2022, Defendant Officer Strickland responded to a call to the Fairfield Police Department reporting that at 519 Madison Street in Fairfield, California, a man matching Plaintiff's description had been observed going through a car known to be owned by someone else. Defs. SUF ¶ 1. The witness, Mr. Stofle, identified the man as Plaintiff, stated he saw Plaintiff inside the vehicle cabin, and saw Plaintiff going through the vehicle and rummaging in the vehicle's trunk. *Id.* ¶ 2. On arriving at the scene, Defendant Officer Strickland observed that the vehicle's front driver-side window was smashed, the rear driver-side door was open, the doors were unlocked, and no items were on the floor or seats of the vehicle apart from a cigarette package. *Id.* ¶ 4; Pl. SUF at 3:15-17. Defendant Officer Strickland contacted the owner of the vehicle, who stated that the car had been locked and that there had been items in the back seat of the vehicle. Defs. SUF ¶ 5. Defendant Officer Strickland called the witness again, who confirmed that Plaintiff, who lived in a motorhome parked approximately 20 feet from the vehicle at incident, was the man he had seen going through the vehicle. *Id.* ¶¶ 3, 7.

Later that day, Fairfield Police Department Dispatch informed Defendant Officer Mroz there was probable cause to arrest Plaintiff for vehicle burglary. *Id.* ¶ 11. Defendants Officer Mroz, Officer Ramirez-Kirgan, and Officer Williams arrived at Plaintiff's motorhome, where Plaintiff was standing outside. *Id.* ¶ 12; Pl. SUF at 7:23-25.

As Defendants Officer Mroz and Officer Ramirez-Kirgan approached, Plaintiff began backing away toward the door of his motorhome. Defs. SUF ¶ 13. As Plaintiff backed up, he asked twice, "Why are there so many police officers here?" Pl. SUF at 6:11-13. Plaintiff asked this a third time; as he did so, he turned and ran away from the officers towards the open door of his motorhome, at which point Defendant Officer Mroz exclaimed that Plaintiff was under arrest, ran after Plaintiff, and Defendants Officer Mroz and Officer Ramirez-Kirgan pushed Plaintiff up against the motorhome door before forcing him to the ground to be handcuffed. *Id.* at 6:28-7:1-3. Because Plaintiff had a scrape on his knee and was limping, he was initially medically rejected from Solano County Jail until he was transported to North Bay Medical Center, which cleared Plaintiff for booking. Defs. SUF ¶¶ 16-17.

### 2. October 21, 2022 Vehicle Tow

On October 18, 2022, a Community Services Officer posted a 72-hour notice on Plaintiff's motorhome and attached trailer at 532 Madison Street stating that the vehicle was parked in violation of Fairfield Municipal Code § 11.3.5. *Id.* ¶ 20. The Community Services Officer also observed multiple items left outside the motorhome, including a generator and dog beds. *Id.* ¶ 19. On October 21, 2022, Defendants Officer Strickland and Officer Piro returned to Madison Street to check the 72-hour notice, where Plaintiff's motorhome and surrounding items remained. *Id.* ¶ 23. Defendants Officer Strickland and Officer Piro arranged for the motorhome and trailer to be towed; Plaintiff was present. *Id.* ¶ 24. Defendants Officer Strickland and Officer Piro also arranged for the removal of the items scattered next to the motorhome or between the motorhome and the trailer, which included a generator, a propane tank, chairs, plastic bins, bottles, clothing, and dog beds. Pl. SUF at 9; Defs. SUF ¶ 27. Some items were passed through an open window of the motorhome or, as with Plaintiff's generator and propane tank, transported for storage at the police station. Defs. SUF ¶¶ 28-29. The remainder were disposed of at the police station dumpster. *Id.* ¶ 30.

/ / /

3

3.        April 24, 2023 Vehicle Tow

On April 20, 2023, Defendant Officer Strickland personally gave Plaintiff another 72-hour notice informing that his motorhome and trailer parked in front of 420 Madison Street was parked in violation of Fairfield Municipal Code § 11.7.2. *Id.* ¶ 34. On April 24, 2023, Defendant Officer Strickland returned to 420 Madison Street, where Plaintiff's motorhome and trailer had been moved about one foot from where they were parked on April 20, 2023. *Id.* ¶ 35. Defendant Officer Strickland arranged for the towing of the motorhome and trailer. *Id.* ¶ 36. As with the prior towing, Defendant Officer Strickland observed personal items surrounding the motorhome, including about 40 potted plants on the roof of the motorhome. *Id.* ¶ 38. Most of the surrounding items were placed inside the motorhome or trailer, except the potted plants, which were removed from the roof for disposal with some containers placed inside the motorhome. *Id.* ¶ 42.

**B.        Procedural Posture**

On October 18, 2023, Plaintiff initiated an action based on the events of Plaintiff's October 18, 2022 arrest and the October 21, 2022 vehicle tow, asserting claims under 42 U.S.C. § 1983 for civil rights violations. *Dayton v. City of Fairfield*, No. 2:23-cv-02362-CSK, ECF No. 1 (*Dayton I*). Plaintiff filed his First Amended Complaint ("FAC") on December 6, 2023. *Dayton I* FAC (ECF No. 16). Defendants filed an answer on January 22, 2024. (ECF No. 17.)

On April 22, 2024, Plaintiff initiated a second § 1983 action based on the events of the April 24, 2023 vehicle tow. *Dayton v. City of Fairfield*, No. 2:24-cv-01170-CSK, ECF No. 1 (*Dayton II*). Defendants answered the Complaint in *Dayton II* on August 22, 2024. (ECF No. 8.) On March 24, 2025, the undersigned granted Defendants' motion (ECF No. 20) to consolidate *Dayton I* and *Dayton II* for all purposes, including trial, identifying *Dayton II* as the lead case. (ECF No. 15.)

Plaintiff filed a motion for summary judgment on April 1, 2026. Pl. MSJ (ECF No. 29). Pursuant to the undersigned's Civil Standing Orders, Defendants filed a cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment

4

on April 16, 2026. Defs. MSJ (ECF No. 30). Plaintiff filed his opposition to Defendants' cross-motion and reply to Defendants' opposition on April 29, 2026. Pl. Opp'n (ECF No. 31). Defendants filed their reply to Plaintiff's opposition on May 13, 2026. Defs. Reply (ECF No. 32).

A hearing on the parties' cross-motions for summary judgment was held on May 26, 2026. 5/26/2026 Minutes (ECF No. 33). At the hearing, the Court observed that the record did not contain copies of any Notice provided to Plaintiff as to the October 21, 2022 towing and item-disposal incident. Defendants stated at the hearing they believed they had inadvertently failed to file the Notices relevant to the October 2022 incident with their summary judgment briefing. The Court ordered Defendants to file the October 2022 Notices and permitted Plaintiff to file a 2-page response. *Id.* Defendants filed a statement on May 28, 2026 indicating that they did not possess a copy of the Notices relevant to the October 2022 incident. 5/28/2026 Declaration of Steven A. Nguy ¶ 3 (ECF No. 35). Plaintiff filed his response on June 10, 2026. (ECF No. 36.)

Additionally, Plaintiff stated at the hearing that he had served Defendants with his responses to Defendants' Statement of Undisputed Facts, but that Plaintiff inadvertently did not file his responses with the Court. The Court ordered Defendants to inform the Court whether Plaintiff served Defendants, and if Plaintiff did, to file their copy of Plaintiff's responses to Defendants' Statement of Undisputed Facts. 5/26/2026 Minutes. The Court further ordered Plaintiff to file a copy of his responses to Defendants' Statement of Undisputed Facts and proof of service. *Id.* Defendants' May 28, 2026 declaration indicated that Plaintiff served his responses to Defendants' Statement of Undisputed Facts on Defendants, and Defendants attached a copy thereof. Nguy Decl. ¶ 4, Exh. A. Thereafter, Plaintiff filed a matching copy of his responses and proof of service. (ECF No. 37.) The Court therefore excuses Plaintiff's failure to file his responses to Defendants' Statement of Undisputed Facts as an inadvertent error, and considers Plaintiff's responses.

At the May 26, 2026 hearing, the Court also granted Plaintiff permission to receive

e-service. 5/26/2026 Minutes.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the mov[ing party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The principal purpose of summary judgment is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Therefore, the "threshold inquiry" is whether there are any factual issues that could reasonably be resolved in favor of either party, or conversely, whether the facts are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

In a summary judgment motion, the moving party must inform the court of the basis for the motion and identify the portion of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the nonmoving party bears the burden of proof on an issue at trial, the moving party can meet its burden by showing or "pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574. 585 (1986). To establish the existence of a genuine issue of material fact, the opposing party may not rely upon the allegations or denials of its pleadings, but must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing

party must demonstrate that the fact might affect the outcome of the suit and a reasonable jury could return a verdict for the opposing party. *See Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). For the moving party to succeed, the court must conclude that no rational trier of fact could find for the opposing party. *Matsushita*, 475 U.S. at 587.

All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). In addition, while a verified complaint may be considered as evidence at the summary judgment stage "if it is based on personal knowledge and if it sets forth the requisite facts with specificity," *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc), an unverified complaint cannot be considered as evidence. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (citing *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995); *Lew v. Kona Hospital*, 754 F.2d 1420, 1423-24 (9th Cir. 1985)).

When the parties file cross-motions for summary judgment, the court must consider each party's evidence, regardless of which side offers the evidence. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) (citation omitted). Each motion must be considered on its own merits. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

Where the parties present video evidence at summary judgment, courts "should [ ] view[ ] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (following review of video, the Supreme Court held deputy acted reasonably in terminating car chase and did not violate respondent's Fourth Amendment right against unreasonable seizure). However, courts are still required to draw all reasonable inferences in the non-movant's favor. *Vos v. City of Newport Beach*, 892

F.3d 1024, 1028 (9th Cir. 2018) ("The record is viewed in the light most favorable to the nonmovants . . . so long as their version of the facts is not blatantly contradicted by the video evidence."); *Williams v. Las Vegas Metro. Police Dep't*, 2016 WL 1169447, at *4 (D. Nev. Mar. 22, 2016) ("[t]he existence of the video does not change the usual rules of summary judgment:  in general, the court will draw all reasonable inferences from the video in plaintiff's favor") (*citing Blankenhorn v. City of Orange*, 485 F.3d 463, 468 n.1 (9th Cir. 2007)). Thus, the Court considers the video footage, drawing all reasonable inferences in non-movant Plaintiff's favor.

## III.   DISCUSSION

Both parties move for summary judgment on all of Plaintiff's claims in both *Dayton I* and *Dayton II* on grounds that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *See* Pl. MSJ (ECF No. 29); Defs. MSJ (ECF No. 30). In *Dayton I*, Plaintiff's FAC alleges six causes of action against Defendants City of Fairfield, Nathan Strickland, Frank Piro, Richard Mroz, Robert Ramirez-Kirgan, and Jimmie Williams, each pursuant to 42 U.S.C. § 1983 for deprivation of Plaintiff's civil rights under the Fourth and Fourteenth Amendments for:  (1) false arrest; (2) excessive force; (3) conspiracy to commit false arrest; (4) "unlawful removal of vehicles," (5) "conspiracy to unlawfully remove vehicles," and (6) unlawful seizure of personal property. *Dayton I* FAC (ECF No. 16). In *Dayton II*, Plaintiff alleges three causes of action against Defendants City of Fairfield, Nathan Strickland, Frank Piro, and Dan Marshall, pursuant to 42 U.S.C. § 1983 for violation of the Fourth and Fourteenth Amendments for:  (1) "unlawful removal of vehicles," (2) "unlawful conversion of personal property," and (3) "conspiracy to unlawfully remove vehicles." *Dayton II* Compl. (ECF No. 1). Although unclear, each cause of action appears to be alleged against all Defendants named in the respective pleadings. Plaintiff acknowledged at the May 26, 2026 hearing that he had not raised any claims for retaliation in this consolidated action.

### A.     42 U.S.C. § 1983 Standards

42 U.S.C. § 1983 provides a cause of action for the deprivation of rights,

8

privileges, or immunities secured by the Constitution or laws of the United States by a person acting "under color of any statute." *Gomez v. Toledo*, 446 U.S. 635, 638 (1980). Section 1983 claims must demonstrate the defendant (1) acted under color of state law; and (2) caused a plaintiff to be deprived of a right secured by the Constitution or laws of the United States. *See Lindke v. Freed*, 601 U.S. 187, 194 (2024). A supervisor may not be held individually liable under § 1983 unless he is personally involved in a constitutional deprivation or there exists a "sufficient causal connection" between the supervisor's wrongful conduct and the constitutional deprivation. *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018).

B.      **Claims Against Individual Defendants in Official Capacities and Claims Against the City of Fairfield**

1.      Claims Against Individual Defendants

At the outset, the pleadings do not specify whether Plaintiff brings claims against Defendants Officer Strickland, Officer Piro, Officer Mroz, Officer Ramirez-Kirgan, Officer Williams, and Police Chief Marshall (the "Individual Defendants") in their personal or official capacities as municipal officials of the City of Fairfield. *See Dayton I* FAC at 1 (ECF No. 16); *Dayton II* Compl. at 1 (ECF No. 1). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted); *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985). If an individual is sued in his official capacity as a municipal official and the municipal entity is also sued, the claims against the individuals are duplicative and should be dismissed. *Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996); *see Johnson v. City of Vallejo*, 99 F. Supp. 3d 1212, 1219 (E.D. Cal. 2015).

Here, to the extent Plaintiff attempts to sue the Individual Defendants in their official capacities, Plaintiff's claims would be redundant and dismissed because Plaintiff also names the City of Fairfield as a defendant in both *Dayton I* and *Dayton II*. *See*

9

*Johnson*, 99 F. Supp. 3d at 1219. The Court therefore construes Plaintiff's claims against the Individual Defendants as being brought against them in their personal capacities.

> 2.    Claims Against the City of Fairfield

Plaintiff also brings § 1983 claims against the City of Fairfield. Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), "[a] government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). There is no respondeat superior liability under § 1983. *Monell*, 436 U.S. at 691-94. A policy is a deliberate choice to follow a course of action made by officials responsible for establishing final policy. *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). A custom is a widespread practice that is "so permanent and well-settled as to constitute a custom or usage with the force of law." *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1147 (E.D. Cal. 2009) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Liability for an improper custom may not be premised on isolated or sporadic incidents, but rather it must be founded on practices of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Additionally, "a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir.1992)). "The policymaker must have knowledge of the constitutional violation and actually approve of it. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (citation

10

omitted). "The policymaker must have knowledge of the constitutional violation and must make a 'conscious, affirmative choice' to ratify the conduct at issue." *Garcia v. City of Imperial*, 2010 WL 3911457, at *1 (S.D. Cal. Oct. 4, 2010) (citing *Lytle*, 382 F.3d at 987). After establishing one of the methods of *Monell* liability, "a plaintiff must also show that the circumstance was (1) the cause in fact and (2) the proximate cause of the constitutional deprivation." *Id.*

Defendants argue that all claims against the City fail and must be dismissed because there are no underlying constitutional violations, there is no evidence or facts demonstrating that a policy or custom caused any alleged constitutional injury, and there is no evidence demonstrating that a policymaker with final authority ratified a constitutional violation. Defs. MSJ at 22-25. Defendants also argue that neither of Plaintiff's complaints nor his opening motion for summary judgment plead or argue *Monell* liability against the City. *Id.* at 22. Plaintiff responds in opposition that Defendant Police Chief Marshall, acting as the policymaking authority for the City, ratified the defendant officers' unconstitutional actions when he received and ignored Plaintiff's cease-and-desist letter dated April 20, 2023, which stated that "Fairfield City Code 11.7.2" is unconstitutional and unenforceable.[2] Pl. Opp'n at 14-16; Pl. MSJ, Exh. 4.

Plaintiff's evidence does not support his argument. The fact that Defendant Chief Marshall received and ignored Plaintiff's letter regarding the asserted unenforceability of Fairfield Municipal Code § 11.7.2 does not rise to the level of ratification of any constitutional violation identified in Plaintiff's pleadings as a result of the April 24, 2023 towing. Nor does Plaintiff present any other evidence that Defendant Chief Marshall, or any other official with final policymaking authority, knew of and ratified any other constitutional violation alleged in Plaintiff's complaints. Plaintiff does not respond to any

---

[2] Plaintiff also transmitted the April 20, 2023 letter by email to the Mayor of Fairfield, the City Council, the City Manager, and the City Attorney, all of whom Plaintiff appears to argue in his briefing are officials with final policymaking authorities over the City. *See* Pl. Opp'n at 15; *see also* Pl. MSJ, Exh. 4; Pl. SUF at 10:10-14. Plaintiff did not raise these allegations in either the *Dayton I* FAC or *Dayton II* Complaint, neither of which clearly plead *Monell* liability against the City.

of Defendants' other arguments regarding his failure to establish *Monell* liability against the City. *See* Pl. Opp'n at 14.

Accordingly, the Court denies Plaintiff's motion for summary judgment as to any claims Plaintiff alleges against the City. The Court grants Defendants' motion for summary judgment as to Plaintiff's claims against the City.

**C.      Fourth Amendment False Arrest Claim (*Dayton I*)**

Plaintiff's second cause of action in the *Dayton I* FAC alleges that in October 2022, Defendants falsely arrested Plaintiff in violation of his rights under the Fourth and Fourteenth Amendments. *Dayton I* FAC at 1-2. Defendants argue that Plaintiff's false arrest claim fails because probable cause existed to arrest Plaintiff. Defs. MSJ at 9-10. The Court agrees with Defendants.

1.      Legal Standard for False Arrest

Claims for wrongful arrest under § 1983 are analyzed under the Fourth Amendment's prohibition against unreasonable seizures using the framework articulated in *Graham v. Connor,* 490 U.S. 386 (1989). The constitutionality of a seizure turns on whether "officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. at 397.

Weighing heavily on the constitutionality of any arrest is "whether, at the moment the arrest was made, the [officer] had probable cause to make it." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause exists if the facts and circumstances within an officer's knowledge are "sufficient to warrant a prudent [person] in believing [an individual] had committed or was committing an offense." *Id*. Probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232 (1983). Courts should examine "the events leading up to the arrest, then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v Pringle*, 540 U.S. 366, 371 (2003). The arresting officer's subjective intention is immaterial in judging whether his or her actions were

12

reasonable under the Fourth Amendment. *Graham*, 490 U.S. at 397.

In the Fourth Amendment context of a § 1983 action, the need to establish the facts underlying the reasonableness of a seizure generally means that determining whether probable cause is present is a question for the jury. *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994). "The mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018). Thus, the Ninth Circuit has long held that, in the context of civil cases, summary judgment is appropriate only if "no reasonable jury could find that the officers did or did not have probable cause to arrest." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984).

The Ninth Circuit has held that "[w]here the source of police information about a suspect is an eyewitness to the crime, probable cause to arrest the suspect may exist even in the absence of an independent showing of the reliability of the source." *United States v. Hammond*, 666 F.2d 435, 439 (9th Cir. 1982); *see also Valencia v. Cnty. of San Bernardino*, 2017 WL 11634381, at *5 (C.D. Cal. Dec. 8, 2017) (finding officers had probable cause as a matter of law where plaintiffs suspected of residential burglary were identified as perpetrators of the crime).

### 2.    October 18, 2022 Investigation

The Court reviewed the video footage of the officers' investigation of the October 18, 2022 incident leading to Plaintiff's arrest. Both parties submitted the video footage from Defendant Officer Strickland's body camera, labeled "Axon Body 2 X81367237" ("Strickland VF").[3] (ECF No. 29-1); Defs. Exh. 2 (ECF Nos. 30-4, 30-5.)

Upon arriving at a suburban location, Defendant Officer Strickland approached two other officers already present near a black Ford sedan, which was parked in the entrance of an alley and had a large stuffed bear lying on the hood. Strickland VF

---

[3]   The body camera video displays a date and time stamp in the top right corner of the video. The Court cites to specific times displayed in the video footage.

21:48:20-21:48:30. Plaintiff's motorhome and trailer can be seen several yards from the black car, parked along the street in front of the alley. *Id.* The time was approximately 2:38 p.m. Defs. Exh. 1 at 1-04 (ECF No. 30-4). Officer Brownridge said, "This door was open like this, but I know this car has been here forever," referring to the driver-side passenger door, which was ajar. Strickland VF 21:48:30-21:48:33. Officer Brownridge further said he thought Plaintiff had recently left the scene in a blue Honda. Strickland VF 21:48:40-21:48:50. Defendant Officer Strickland then called the witness; only one side of the conversation can be heard in the video footage. Defendant Officer Strickland asked, "Can you see us out here?", "Are we at the right car?", "Did you see him leave at all?", and "Do you know if this window was always shattered?" Strickland VF 21:49:10-21:49:30. While on the phone, Defendant Officer Strickland repeatedly tried to shut the open driver's side passenger door but was unsuccessful. *Id.*

Defendant Officer Strickland then called the vehicle's owner; both sides of the conversation can be heard in the video footage. Defendant Officer Strickland informed him that a neighbor had called the Fairfield Police Department regarding a "black-looking police car" parked in the area, and that "the guy who owns the motorhome out here that's been causing a problem, he was going through it." Strickland VF 21:50:31-21:50:53. Defendant Officer Strickland asked the owner if Plaintiff had had permission to go through his car, and the owner replied, "Not at all." Strickland VF 21:51:00-21:51:05. Defendant Officer Strickland also asked if the doors had been locked and the back door had been closed, and the owner confirmed they had. Strickland VF 21:52:04-21:52:13. Defendant Officer Strickland asked if the owner had any property in the car; the owner replied there were items in the trunk, the glove compartment, and a black "bag" in the back seat. Strickland VF 21:52:19-21:52:50. Defendant Officer Strickland confirmed that there was nothing in the backseat of the vehicle except "an empty Marlboro cigarettes thing" and that the glovebox was empty. Strickland VF 21:52:50-21:53:12.

Defendant Officer Strickland called the witness again to confirm exactly what he had seen; both sides of the conversation can be heard in the video footage. The witness

14

said, "I saw him go through the cab and the trunk. What he got out, I couldn't tell." Strickland VF 21:55:18-21:55:60. Defendant Officer Strickland asked the witness to confirm the identity of the person he had seen in the car; the witness said he "lived a block away." Strickland VF 21:56:10-21:56:15. Defendant Officer Strickland asked if it was "the same one who owns this big motorhome out front," that is, Plaintiff, and the witness confirmed it was. Strickland VF 21:56:38-21:56:46.

Defendant Officer Strickland re-entered his patrol vehicle and called the owner one more time to obtain his personal information, explain that he could not open the trunk to confirm whether any items were in it but that the cabin and glove box had no items, and confirm the owner was certain that the car was locked. Strickland VF 22:01:45-22:03:00.

### 3.    Discussion

Here, the information obtained by Defendant Officer Strickland established probable cause to arrest Plaintiff. An eyewitness positively identified Plaintiff as the man the witness saw inside the vehicle at issue going through the cabin and trunk. Defs. SUF ¶¶ 2, 7; Strickland VF 21:55:18-21:56:46. Defendant Officer Strickland contacted the owner of the vehicle, who stated that the vehicle had been locked, the vehicle had items in the cabin and trunk, and that Plaintiff did not have permission to be in the vehicle. Defs. SUF ¶ 5; Strickland VF 21:50:31-21:53:12. Defendant Officer Strickland observed that the vehicle's cabin was empty apart from a cigarette package. Defs. SUF ¶ 4; Strickland VF 21:52:50-21:53:12. These facts are sufficient as a matter of law to establish probable cause where no reasonable jury could find that the officers did not have probable cause to arrest Plaintiff.

Plaintiff's motion and opposition do not dispute the reliability of the witness and victim statements. Instead, he asserts there are various exculpatory facts that Defendants failed to investigate further, such as when the car's owner last checked that the doors were locked, whether Plaintiff was the one who had shattered the front driver-side window, and that an empty cigarette package was found in the car that did not

15

belong either to the car's owner or to Plaintiff, who does not smoke. Pl. MSJ at 3-4; Pl. Opp'n at 2-4. However, "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *D.C. v. Wesby*, 583 U.S. 48, 61 (2018). Plaintiff also argues that Defendant Officer Mroz lacked probable cause to arrest Plaintiff because Officer Mroz relied solely on information relayed by Dispatch. Pl. Opp'n at 4. This argument plainly fails because "[a]rresting officers are entitled to rely on the probable cause developed by other officers." *United States v. Sims*, 504 F. App'x 614, 615 (9th Cir. 2013) (citing *United States v. Hensley,* 469 U.S. 221, 229-32 (1985)). The undisputed facts in this case establish that Defendants had probable cause to arrest Plaintiff for burglary of the vehicle. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's § 1983 claim for false arrest in the *Dayton I* FAC, and denies Plaintiff's motion for summary judgment as to the same.

### D.    Fourth Amendment Excessive Force Claim (*Dayton I*)

Plaintiff's second cause of action in the *Dayton I* FAC alleges the use of excessive force during his arrest on October 18, 2022. *Dayton I* FAC at 2. Defendants argue that summary judgment should be granted against Plaintiff on his excessive-force claim because the undisputed facts indicate Plaintiff was attempting to evade arrest and that Defendants used a "modest" amount of force to bring Plaintiff under control. Defs. MSJ at 12. Plaintiff argues that summary judgment should be granted in his favor because the force used in his arrest was clearly unreasonable where Plaintiff did not present a physical threat and Defendant Officer Mroz could have, but failed to, initially provide a verbal warning to Plaintiff to stop backing away. Pl. MSJ at 4-5. In his opposition, Plaintiff contends that he was not evading arrest but simply "backed up away" from the approaching officers in the absence of any command to stop or place him under arrest. Pl. Opp'n at 5. Based on this characterization, Plaintiff further argues that in the seconds between Defendant Mroz's formal arrest announcement and the officers' use of force, Plaintiff was not resisting or evading arrest. *Id.*

/ / /

1.    <u>Legal Standard for Excessive Force</u>

Under the Fourth Amendment, law enforcement officers making an arrest may use only an amount of force that is objectively reasonable in light of the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). This objective reasonableness analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (citation and internal quotation marks omitted). The objective reasonableness analysis comprises a three-part test. *Id.* First, a court must "assess the quantum of force used to arrest [the plaintiff] by considering the type and amount of force inflicted." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) (citations and internal quotation marks omitted). Second, a court must consider the government's countervailing interests in applying the force used, which may include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (quoting *Graham*, 490 U.S. at 396). "Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given[,] and whether it should have been apparent to officers that the person they used force against was emotionally disturbed." *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011) (citations omitted). Third and finally, the court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." *Young v. County of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011).

"[T]he reasonableness of force used is ordinarily a question of fact for the jury." *Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997). "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force

cases should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) (citation omitted).

### 2.    October 18, 2022 Arrest

The Court reviewed the video footage of the October 18, 2022 arrest submitted by both parties. Plaintiff submitted the following recordings:  (1) video footage from Defendant Officer Mroz's body camera, labeled "Axon Body 3 X60A67955" ("Mroz VF"); (2) video footage from Defendant Officer Ramirez-Kirgan's body camera, labeled "Axon Body 3 X60A65802" ("Ramirez-Kirgan VF"); and (3) video footage from Defendant Officer Williams's body camera, labeled "Axon Body 3 X60A5798Z" ("Williams VF"). (ECF No. 29-1.)  Defendants submitted the video footage from Defendant Officer Mroz's body camera. Defs. Exh. 3 (ECF Nos. 30-4, 30-5).

Plaintiff's arrest occurred in the evening of October 18, 2022, around 6:48 p.m. Defs. SUF ¶ 12. Defendants Officer Mroz and Officer Ramirez-Kirgan exited their patrol vehicles and began approaching Plaintiff, who was standing alone on the sidewalk several feet from his parked motorhome and trailer with his arms crossed. Mroz VF 18:48:14-18:48:48; Ramirez-Kirgan VF 18:48:26-18:48:50. At the time of the arrest, Plaintiff was 65 years old, 5'7",  and weighed 150 pounds. Defs. Exh. 1 at 1-08. As Defendants Officer Mroz and Officer Ramirez-Kirgan approached Plaintiff, Defendant Officer Williams followed several yards behind, while two other officers headed toward the front of the motorhome from its left street-facing side. Williams VF 18:48:56-18:49:06. As they approached, Defendant Officer Mroz said, "Mr. Dayton, can we come talk to you over here?" Mroz VF 18:48:50-18:48:52. Plaintiff responded, "No, I don't trust you. What do you want me to come over there for," and he immediately began backing away from the officers toward the open door at the front end of the motorhome, his arms still crossed. Mroz VF 18:48:50-18:48:55. Though Plaintiff said, "We can talk right here," he continued to walk away from the officers. Mroz VF 18:48:56-18:48:58.

As Plaintiff backed away, Defendants Officer Mroz and Officer Ramirez-Kirgan continued to walk towards Plaintiff, and Defendant Officer Mroz asked Plaintiff if he had

18

wanted to report a theft, to which Plaintiff responded, "Uh huh." Mroz VF 18:48:55-18:49:03. Plaintiff asked, "Why are there so many officers here?" Mroz VF 18:49:03-18:49:04. Two of Plaintiff's dogs next to the motorhome got up and faced Defendants Officer Mroz and Officer Ramirez-Kirgan; barking can be heard, but the source of the barking is unclear. Williams VF 18:49:06-18:49:10. Plaintiff owned two pit bulls. Defs. SUF ¶ 22. Plaintiff, still backing away, asked again, "Why do we have so many officers here?" Mroz VF 18:49:05-18:49:08.

The next event occurred in the span of about three seconds. Plaintiff, now a few yards away from the open door of his motorhome, asked again why so many officers were present, turned, and ran away from the officers toward the door; Defendant Officer Mroz simultaneously announced Plaintiff was under arrest and chased after Plaintiff. Mroz VF 18:49:08-18:49:10. Both reached the open door of the motorhome at about the same time, when Defendant Officer Mroz stretched out his arms and pushed Plaintiff into the door. *Id.* Defendant Officer Ramirez-Kirgan followed Defendant Officer Mroz from behind, and both officers brought Plaintiff to the ground. Williams VF 18:49:11-18:49:20.

While this occurred, the two officers along the street ran around the front of the motorhome; there appeared to be between two and four officers involved in bringing Plaintiff to the ground, including Defendants Officer Mroz and Officer Ramirez-Kirgan. *Id.* Plaintiff said "OK" three or four times, then repeatedly exclaimed, "I'm going!" as he was forced to lie face down and partially on his right side. *Id.* After Plaintiff was secured, two officers proceeded to handcuff him. One officer grabbed Plaintiff's right arm behind his back, while Defendant Officer Mroz grabbed Plaintiff's left arm and twisted it around toward Plaintiff's back to handcuff him. Mroz VF 18:49:15-18:49:23. Plaintiff exclaimed, "I'm not moving!" and "Please, please, I'm not moving, stop bending the arm" while being handcuffed. Mroz VF 18:49:24-18:49:37. While Plaintiff was being forced to the ground, his dogs began barking and growling, approaching the officers, and officers can be heard saying, "Watch out for these dogs," and "Back up." Williams VF 8:49:17-18:49:22. Three officers were focused on Plaintiff's dogs by motioning and heading them off from

Plaintiff as he was handcuffed, while Defendant Officer Williams stood by. *Id.* .

Defendant Officer Mroz and another officer attempted to lift Plaintiff up by his arms, and Plaintiff said, "Please, you're not telling me I can get up." Mroz VF 18:49:50-18:49:52. An officer then told Plaintiff to stand up, and two officers held onto Plaintiff's arms as they walked Plaintiff, who was now limping, toward a patrol vehicle parked out behind the motorhome and trailer. Mroz VF 18:49:55-18:50:25. On being asked the charge, Defendant Officer Mroz informed Plaintiff that it was burglary of a vehicle. *Id.* The challenged excessive force incident lasted approximately 45 seconds from when Plaintiff was pushed against the motorhome, taken to the ground, handcuffed, and Plaintiff was lifted to his feet. Mroz VF 18:49:11-18:49:56. From the first verbal interaction with the officers  to Plaintiff's placement into the patrol vehicle, the entire incident lasted under three minutes. Mroz VF 18:48:50-18:51:20. It appears six officers in total were present.

### 3.   Discussion

Following the Supreme Court's instruction, the Court views the facts as depicted by the video evidence, *see Scott*, 550 U.S. at 380-81, drawing all reasonable inferences in plaintiff's favor so long as plaintiff's version is not contradicted by the video evidence, *see Vos*, 892 F.3d at 1028. Even after drawing all reasonable inferences in Plaintiff's favor and considering that excessive-force claims should be decided on summary judgment "sparingly," *Avina*, 681 F.3d at 1130, the Court concludes that the officers' use of force was reasonable under the circumstances, no reasonable jury could find for Plaintiff, and Defendants are therefore entitled to summary judgment.

As to the type and amount of force inflicted, the use of force consisted of pushing Plaintiff to the door of his motorhome, maneuvering him to the ground, and twisting Plaintiff's arms in order to apply handcuffs behind Plaintiff's back. Pl. SUF at 6:28-7:1-3; Def. SUF ¶ 15; Mroz VF 18:49:08-18:50:25. Plaintiff argues that this force was excessive because Defendants could have first given a verbal warning to Plaintiff to stop moving. Pl. MSJ at 5; Pl. Opp'n at 6. However, whether a warning was given is only a non-

dispositive factor where less than deadly force is employed but the force may result in serious injury. *See Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001). Given that Plaintiff does not dispute he was cleared for booking by North Bay Medical Center and has not presented any affirmative evidence of the "minor injuries to his face and leg" as alleged in the FAC, *see Dayton I* FAC at 2, this use of force was relatively modest even in the absence of a warning. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (affirming summary judgment on excessive force claim because plaintiff failed to provide evidence of injury as a result of having her arm twisted to be handcuffed).

As to the governmental interest in applying the force, the video evidence shows that Plaintiff backed away from the approaching officers, then ran away from the officers towards the door of his motorhome and reached the door just before the arresting officers reached him. Mroz VF 18:49:08-18:49:10; Williams VF 18:49:11-18:49:20. Plaintiff contends that his actions do not justify the use of force because Defendant Officer Mroz had not yet announced Plaintiff was under arrest, and thus Plaintiff was not truly "fleeing" or evading arrest. *See* Pl. Opp'n at 5-6. The Court agrees with Defendants that this is a distinction without a difference because Plaintiff attempted to avoid the arresting officers by running away from them.

Thus, balancing the use of force and the government's interest in preventing Plaintiff from fleeing, the Court concludes that the modest amount of force applied here was objectively reasonable to effectuate the arrest and bring Plaintiff under control and no reasonable jury could find for Plaintiff on the excessive force claim. *See Bennett v. Gow*, 345 F. App'x 286 (9th Cir. 2009) (holding that ground take-down was not objectively unreasonable use of force where plaintiff tried to walk away from police and twisted away while being handcuffed).

Accordingly, the Court grants Defendants' motion for summary judgment as to the excessive-force claim and denies Plaintiff's motion for summary judgment as to this claim.

**E.    Claims Based on Removal of Plaintiff's Vehicle**

Plaintiff brings two causes of action for "unlawful removal of vehicles" based on the allegedly unlawful towing of his motorhome and trailer on October 21, 2022 and April 24, 2023, respectively. *Dayton I* FAC at 3; *Dayton II* Compl. at 1-2. Plaintiff alleges in both instances that Defendants violated his civil rights under the Fourth and Fourteenth Amendments, as he does in each of his other causes of action. Where Plaintiff does not raise any Fourteenth Amendment due process issues in his affirmative motion or in his opposition to Defendants' motion, which only addresses the Fourth Amendment, the Court construes these claims as § 1983 claims challenging the seizure of Plaintiff's personal property in violation of the Fourth Amendment. Plaintiff was informed and recognized at the May 26, 2026 hearing that he had not raised any claims challenging the constitutionality of the Fairfield ordinances under which his vehicles were removed.

The Fourth Amendment protects against unreasonable seizures, that is, interferences in property interests. *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). "The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." *Id.* "A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018) (citation omitted). One exception to the warrantless seizure of an automobile by impoundment is the community caretaker doctrine, which justifies the removal of vehicles from the streets when the vehicle would "jeopardize public safety and the efficient movement of vehicular traffic." *Id.* (citation omitted).

The Ninth Circuit has held that "the decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment." *Miranda*, 429 F.3d at 864; *Sandoval*, 912 F.3d at 516. "Violation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property. Were it otherwise, the government could seize and destroy any illegally parked car or unlawfully unattended dog without

implicating the Fourth Amendment." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1029 (9th Cir. 2012). To properly apply the community caretaker doctrine, then, "the decision to impound a vehicle after the driver has violated a vehicle regulation must consider the location of the vehicle, and whether the vehicle was actually 'impeding traffic or threatening public safety and convenience' on the streets, such that impoundment was warranted." *Miranda*, 429 F.3d at 865. "The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale." *Id.* at 866.

Here, it appears undisputed that Defendants acted without a warrant. The parties instead dispute whether Plaintiff violated the Fairfield Municipal Code and the California Vehicle Code by leaving his motorhome parked in the same location for over 72 hours (give or take several feet of distance). Pl. MSJ at 7-8, 9; Defs. MSJ at 13-15. The police report for the October 21, 2022 towing indicates the towing was for violation of Fairfield Municipal Code § 11.3.5, whereas the police report and Notice for the April 24, 2023 towing cites Fairfield Municipal Code § 11.7.2. Defs. SUF ¶¶ 20, 34; Defs. Exh. 4 at 4-13, 4-16 (ECF No. 30-4); Defs. Exh. 6 at 6-20, 6-21, 6-27 (ECF No. 30-4). However, this issue is ultimately beside the point because Defendants may not rely solely on state or municipal law to justify the warrantless impoundment of Plaintiff's vehicle. *See Miranda*, 429 F.3d at 864; *Sandoval*, 912 F.3d at 516; *Pina v. City of Long Beach*, 2019 WL 6998662, at *9 (C.D. Cal. June 28, 2019) (rejecting defendant's argument that impoundment based on city ordinance permitting forfeiture was per se reasonable under Fourth Amendment), *report and recommendation adopted,* 2019 WL 6998768 (C.D. Cal. Oct. 12, 2019). At oral argument, Defendants conceded they had not presented evidence that Plaintiff's motorhome alone threatened public safety or impeded traffic. Instead, Defendants presented evidence that before the October 2022 towing, public safety concerns were raised where a neighboring resident on Madison Street called the Fairfield Police Department to report that Plaintiff's motorhome "had been in front of their residence for several days," "Plaintiff walked around nude, allowed his two pit bull dogs to roam and defecate on their lawn," and Plaintiff was "being aggressive and yelling at

23

neighbors in the area." Defs. SUF ¶ 22. Plaintiff was present during the process of towing his motorhome on October 21, 2022 and April 24, 2023. Defs. SUF ¶¶ 24, 41. Plaintiff had a yet-unexpired driver's license during both instances. Defs. Exh. 6 at 6-26.

The Court concludes that there are disputed issues of material fact to determine whether an exception to the warrantless seizure of an automobile has been established as to claims based on the towings of Plaintiff's motorhome.

### F. Claims Based on Disposal of Plaintiff's Personal Property

Plaintiff brings two causes of action for "unlawful seizure of personal property" and "unlawful conversion of personal property" arising out of the disposal of the miscellaneous items surrounding or atop Plaintiff's motorhome and trailer when Plaintiff's vehicle was towed on October 21, 2022 and April 24, 2023. *Dayton I* FAC at 3-4; *Dayton II* Compl. at 2-3. At the May 26, 2026 hearing, Plaintiff confirmed that his claim based on the October 21, 2022 incident covers only the disposal of items on top of the motorhome, the trailer, or the trailer tongue (*i.e.*, the connecting apparatus between the motorhome and trailer). Plaintiff's claim based on the April 24, 2023 incident concerns only the disposal of Plaintiff's potted plants on top of his motorhome. For the same reasons as above, the Court construes these claims as claims under § 1983 solely for unreasonable seizure of Plaintiff's personal property in violation of the Fourth Amendment where Plaintiff does not raise any due process issues.

Again, under the Fourth Amendment, "[a] seizure conducted without a warrant is per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Sandoval*, 912 F.3d at 515. "A seizure conducted without a warrant may still be reasonable if the official believes the property is abandoned . . . believes the property poses an immediate threat to public health or safety . . . or holds the property for its return and notifies the property owner." *Prado v. City of Berkeley*, 2024 WL 3697037, at *12 (N.D. Cal. Aug. 6, 2024) (citing *Lavan*, 693 F.3d at 1024).

In *Lavan v. City of Los Angeles*, the City of Los Angeles seized and destroyed

property lying on sidewalks and belonging to homeless individuals in Skid Row, doing so when the individuals had stepped away to perform necessary tasks including showering, eating, using restrooms, or attending court. 693 F.3d at 1025. The property included "personal identification documents, birth certificates, medications, family memorabilia, toiletries, cell phones, sleeping bags and blankets." *Id.* On several such occasions, the plaintiffs explained the property was not abandoned and implored the City not to destroy their possessions. *Id.* The district court issued a preliminary injunction enjoining the City from seizing and destroying property in Skid Row absent an objectively reasonable belief the property had been abandoned, presented an immediate threat to public health or safety, or was evidence of a crime or contraband. *Id.* at 1026-27.

In rejecting the City's appeal of the preliminary injunction in *Lavan*, the Ninth Circuit held that the Fourth Amendment protects one's property rights regardless of whether one has a legitimate expectation of privacy in that property. *Id.* at 1027-29. The Ninth Circuit further noted that the City's destruction of the plaintiff's unabandoned legal papers, shelters, and other personal belongings was unreasonable under the Fourth Amendment as weighed against plaintiff's possessory interests in those personal belongings. *Id.* at 1030. The court affirmed that the district court applied the proper legal standard for determining whether the City acted reasonably under the Fourth Amendment, namely, by balancing "the invasion of [plaintiffs'] possessory interests in their personal belongings against the City's reasons for taking the property." *Id.* at 1030.

Here, Plaintiff contends that Defendants acted unlawfully in seizing and disposing of his personal property, including disposing of a "usable plastic chair, water bottles, dog cushions and water dish and tiedown chains" on October 21, 2022, and disposing of multiple live, potted plants atop Plaintiff's motorhome on April 24, 2023. Pl. MSJ at 9-10.[4] Defendants argues that the disposal of Plaintiff's personal property was reasonable

---

[4]  Plaintiff also argues in conclusory fashion that Defendants violated Policy 466 in the Fairfield Police Department's Policy Manual, which specifies guidelines for interactions between law enforcement and the homeless community, by failing to store Plaintiff's plants for later retrieval pursuant to the Policy. *See id.*, Exh. 5.

under the Fourth Amendment because the City had an interest in the aesthetic appearance of its community, Defendants sorted and disposed of items deemed a safety hazard or "of minimal monetary value," including "used bottles, soiled clothes, broken furniture, [and] plastic containers," and Defendants provided Plaintiff with 72 hours' notice on both occasions, during which Plaintiff could have stored the exposed items inside his motorhome. Defs. MSJ at 16-19. Plaintiff disputes that his personal property obstructed the sidewalk, that any items constituted trash or presented a safety hazard, and that Plaintiff had proper notice of the impending seizure of his personal items, rather than simply notice of the alleged parking violation, on either of the two occasions. Pl. Opp'n at 9-11. Plaintiff further disputes that he could have relocated his personal property because Plaintiff was homeless, and moving the exposed property inside his motorhome would render the motorhome unusable for daily living. *Id.* at 9. Again, it appears undisputed that Defendants acted without a warrant.

At the May 26, 2026 hearing, Plaintiff conceded that Defendants could dispose of exposed items left on City property, but he maintains Defendants could not lawfully remove personal property atop Plaintiff's motorhome, in Plaintiff's trailer, or on the trailer tongue. Plaintiff also conceded that, as to the April 24, 2023 incident, Plaintiff did have an opportunity to take possession of the plants on his motorhome and that the City could seize the plants to safety tow the motorhome, but that Defendants' *destruction* of the plants instead of taking and storing them for future recovery constituted an unreasonable seizure.

The Court finds that there is a genuine dispute of material fact as to Plaintiff's claims based on Defendants' disposal of Plaintiff's personal property surrounding his motorhome because the parties dispute material facts relevant to the Fourth Amendment reasonableness inquiry. First, as Plaintiff contended at oral argument, the parties dispute the value of the items removed for disposal on October 21, 2022 and April 24, 2023. A reasonable jury could find that some of the items Defendants seized and threw away had personal value to Plaintiff (e.g., a "Lazy Boy style recliner," Pl. Opp'n at 10) rather

than the minimal value assessed by the Defendant Officers. *See Pottinger v. City of Miami*, 810 F. Supp. 1551, 1559 (S.D. Fla. 1992) (finding Fourth Amendment violation and noting "a homeless person's personal property is generally all he owns; therefore, while it may look like 'junk' to some people, its value should not be discounted").

Second, as to the October 21, 2022 incident, there is a genuine dispute of material fact as to whether Defendants had a legitimate interest in disposing of Plaintiff's personal property on the basis that the property obstructed the sidewalk or presented a health or safety hazard, where Plaintiff challenges only the disposal of property placed on his motorhome, in his trailer, or on the trailer tongue.

Third, as to the April 24, 2023 incident, there are genuine disputes of material fact as to whether Defendants had a proper safety concern in destroying Plaintiff's potted plants on the roof of his motorhome to ensure the motorhome could be safely towed.

Fourth, there are genuine disputes of material fact as to whether, on both occasions, Plaintiff received adequate notice that his personal property would be removed incidental to the towing of his motorhome and trailer, and whether he had a reasonable opportunity to either safekeep or relinquish his interest in the property. *Compare Sullivan v. City of Berkeley*, 383 F. Supp. 3d 976, 985-86 (N.D. Cal. 2019) (granting summary judgment for defendant City on Fourth Amendment seizure claims because record demonstrated plaintiffs were given a month to remove exposed personal property), *with Sage v. Cnty. of Monterey*, 2024 WL 2941753, at *11 (N.D. Cal. June 10, 2024) (denying summary judgment on plaintiff's Fourth Amendment seizure claim because evidence indicated plaintiff did not intend to abandon personal property removed in connection with towing of plaintiff's RV and trailer). For example, Defendants contend that the October 2022 notice mentioned the removal of miscellaneous items, but Plaintiff disputes whether the citation provided adequate notice, and a copy of the October 2022 Notice is not part of the record before the Court. *See* Defs. SUF ¶ 21 & Exh. 4 at 4-15; Pl. Opp'n at 10; 5/28/2026 Nguy Decl. ¶ 3. As to the April 2023 incident, Defendants provided a copy of the April 20, 2023 Warning Notice issued to Plaintiff for

his motorhome, but this notice did not refer to other personal property, and Plaintiff argues that no notice was given regarding seizure and destruction of his other personal property, *i.e.*, the potted plants. *See* Defs. Exh. 6 at 6-27; Pl. Opp'n at 10.

Because there are genuine disputes of material facts as to Plaintiff's personal property seizure claims, summary judgment is not appropriate on either claim. However, these claims shall proceed only as to Defendants Officer Strickland and Officer Piro in their personal capacities, who are the only Individual Defendants whom Plaintiff identifies as having participated in the disposal of his personal property during the October 2022 and April 2023 incidents. *See Dayton I* FAC at 3-4; *Dayton II* Compl. at 2; Pl. SUF at 9, 10-13; Pl. MSJ at 3, 9, 10.

### G.    Conspiracy Claims

Plaintiff alleges three claims for conspiracy to deprive his constitutional rights. First, Plaintiff alleges Defendants conspired to commit false arrest. *Dayton I* FAC at 2-3. Second, Plaintiff alleges Defendants conspired to unlawfully tow and impound his motorhome and trailer on October 21, 2022. *Id.* at 3. Third, Plaintiff alleges Defendants conspired to unlawfully tow and impound his motorhome and trailer on April 24, 2023. *Dayton II* Compl. at 3.

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (citation and internal quotation marks omitted). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* (citation omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* (citation omitted). "There is no unconstitutional conspiracy without . . . shared specific intent" to violate one's constitutional rights. *O'Handley v. Weber*, 62 F.4th 1145, 1162-63 (9th Cir. 2023); *see also Josfan v. Nylon Project, LLC*, 595 F. App'x 716, 717 (9th Cir. 2015).

Here, because Plaintiff's claim for false arrest fails as a matter of law due to the presence of probable cause, Plaintiff's claim for conspiracy to commit false arrest must also fail. *See Chweya v. Baca*, 130 F. App'x 865, 868 (9th Cir. 2005).

In addition, all three conspiracy claims fail because Plaintiff did not make a sufficient showing to establish a meeting of the minds between Defendants to deprive Plaintiff of his constitutional rights, a required element. Plaintiff's evidence for a conspiracy to unlawfully remove his motorhome consists solely of the fact that Defendants Officer Strickland and Officer Piro arranged for the towing on October 21, 2022 and that Plaintiff sent a cease-and-desist letter to Defendant Chief Marshall and other city officials prior to the April 24, 2023 towing. Pl. SUF at 9, 13:14-23. This is merely speculative of a conspiracy. Plaintiff presents no evidence of a shared goal between any Defendants to violate his constitutional rights. "Plaintiff has not alleged nor proved any specific facts suggesting such an agreement between the defendants. Plaintiff's conclusory assertions that defendants conspired do not support a claim for a constitutional violation." *Guerrero v. McClure*, 2013 WL 789103, at *12 (E.D. Cal. Mar. 1, 2013), *report and recommendation adopted,* 2013 WL 5156843 (E.D. Cal. Sept. 12, 2013). Further, Plaintiff's argument in opposition, that a conspiracy claim succeeds if evidence demonstrates that the defendants collaborated to commit an act that merely had the consequence of violating Plaintiff's constitutional rights, fails. *See* Pl. Opp'n at 7, 9; Pl. Suppl. Statement at 2 (ECF No. 36); *see also Crowe*, 608 F.3d at 440-41 (holding that evidence of common objective to prosecute is insufficient to establish conspiracy, and "key inquiry" is whether common objective was to *falsely* prosecute plaintiffs); *O'Handley*, 62 F.4th at 1163.

Thus, there is no genuine dispute of material fact as to Plaintiff's conspiracy claims. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's third and fifth causes of action in the *Dayton I* FAC and Plaintiff's third cause of action in the *Dayton II* Complaint, and denies Plaintiff's motion for summary judgment as to the same.

**H.    Qualified Immunity**

Defendants argue the Individual Defendants are all entitled to qualified immunity on each of Plaintiff's claims. Defs. MSJ at 19-21.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations omitted). This protection exists even if the officer's actions resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (quotations omitted). Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case. *See id.* at 236. The court need not consider the two inquiries in a specific sequence. *See id*. If the answer to either inquiry is no, then the official is entitled to qualified immunity. The jury determines the factual question of whether a constitutional right was violated, while the judge determines the legal question of whether the right was clearly established. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009); *see also Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

A right is "clearly established" when, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotations omitted). This is an objective standard, and "the defendant's subjective understanding of the constitutionality of his or her conduct is irrelevant." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). For a constitutional right to be clearly established, "a court must define the right at issue with specificity and not at a high level of generality," *Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (quotations omitted), and "existing precedent must have placed the

statutory or constitutional question beyond debate," *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam). However, the court need not identify an identical prior action. *Scott v. Cnty. of San Bernardino*, 903 F.3d 943, 951 (9th Cir. 2018). Where "[t]he parties dispute some facts necessary to decide the issue of qualified immunity . . . . summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007).

The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation. *Gordon*, 6 F.4th at 969. However, the court will "draw on [its] 'full knowledge' of relevant precedent rather than restricting [its] review to cases identified by the plaintiff." *Id.*

Here, because the Court grants Defendants summary judgment as to Plaintiff's § 1983 claims for false arrest, excessive force, conspiracy to commit false arrest, and conspiracy to unlawfully remove Plaintiff's vehicle, qualified immunity is not implicated as to those claims because there is no constitutional violation. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) (qualified immunity is not implicated in the absence of a constitutional violation). The Court proceeds to consider qualified immunity as to Plaintiff's vehicle seizure claims and personal property seizure claims. Because there are genuine disputes of material fact as to the vehicle seizure and property seizure claims, for the purposes of the qualified immunity analysis, the Court focuses its analysis on the second inquiry (whether the right was clearly established). *See Ashcroft v. al-Kidd*, 563 U.S. at 741-42 (conducting qualified immunity analysis by focusing on whether the right was clearly established and holding official was entitled to qualified immunity where right was not clearly established, even assuming a Constitutional violation).

### 1.    Plaintiff's Vehicle Seizure Claims

Defendants argue that the Individual Defendants are entitled to qualified immunity on Plaintiff's vehicle seizure claims because they "acted reasonably upon the information available to them at the time," namely that Plaintiff was in violation of Fairfield Municipal

31

Code § 11.3.5 on October 21, 2022 and § 11.7.2 on April 24, 2023. Defs. MSJ at 21. For the qualified immunity analysis, the Court must determine whether Plaintiff's Fourth Amendment right to not have his motorhome towed was clearly established when Plaintiff's motorhome was towed in October 2022 and April 2023 without a warrant for violating Fairfield Municipal Codes. The Court concludes that the right was not clearly established and the Individuals Defendants are therefore entitled to qualified immunity on Plaintiff's vehicle seizure claims even assuming that they violated the Fourth Amendment in towing Plaintiff's motorhome.

Although the Ninth Circuit has held that violations of state or municipal law do not render a vehicle impoundment per se reasonable under the Fourth Amendment, it is unclear the extent to which this holding prevents warrantless seizures of illegally parked vehicles. The Ninth Circuit has at least suggested that evidence that a vehicle was parked illegally could satisfy the community caretaker doctrine. *See United States v. Cervantes*, 703 F.3d 1135, 1141-42 (9th Cir. 2012) (finding defendants failed to show "that Cervantes's vehicle was parked illegally, posed a safety hazard, or was vulnerable to vandalism or theft"). Likewise, district courts in this circuit disagree on whether the community caretaker doctrine has been met where a vehicle has been towed on grounds that it was illegally parked on public property.[5] *Compare Quinlan v. City of Seattle*, 2023 WL 9750576, at *5 (W.D. Wash. Dec. 22, 2023) (granting summary judgment for city where city removed plaintiff's vehicle for violating 72-hour parking code because vehicle was parked on public street and could be impounded for public safety), *adopted as modified*, 2024 WL 707685 (W.D. Wash. Feb. 21, 2024), *with Fitzpatrick v. City of Los Angeles*, 2024 WL 3464174, at *8 (C.D. Cal. June 13, 2024) (granting

---

[5] District courts have also recognized that other state or municipal traffic violations may satisfy the community caretaker exception without needing additional evidence. For example, courts have found that impoundment based on violations of vehicle registration requirements, whereby the violator is prevented from lawfully driving their vehicle, may satisfy the community caretaker exception. *See, e.g.*, *Crago v. Knacke*, 2020 WL 3073771, at *3 (E.D. Cal. June 10, 2020), *report and recommendation adopted*, 2020 WL 3977826 (E.D. Cal. July 14, 2020).

summary judgment for plaintiff because defendants failed to meet their burden to provide evidence that community caretaker exception applied to towing plaintiff's vehicle beyond showing that it was parked in red zone). To complicate matters further, California courts appear to condone "'warrantless tows of any illegally parked vehicles' . . . even if they do not come within the understanding of the 'community caretaker' exception based on public health or convenience due to the location of the vehicle." *McCaffrey v. City of Richmond*, 2025 WL 1745727, at *8 (N.D. Cal. June 23, 2025) (quoting *Coalition on Homelessness v. City and Cnty. of San Francisco*, 93 Cal. App. 5th 928, 947 (2023)).

Because of the lack of clarity in this area, a reasonable official may not have understood that executing a warrantless tow of a vehicle in violation of the City's 72-hour parking codes could be unreasonable under the Fourth Amendment absent evidence that the vehicle's presence creates a public safety or traffic concern. Here, Defendants had, at minimum, probable cause to believe Plaintiff violated Fairfield Municipal Codes on October 21, 2022 and April 24, 2023 because 72-hour notices were placed on Plaintiff's vehicle and, in both instances, Defendants returned after 72 hours to find Plaintiff's vehicle still parked in the same or similar location. Defs. SUF ¶¶ 23, 35. Existing precedent does not place beyond debate whether Defendants were required to show more to execute a warrantless tow of a vehicle parked illegally on public property. The Court concludes that the right was not clearly established at the time of the October 2022 and April 2023 towings. Thus, Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment vehicle seizure claims.

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's vehicle seizure claims based on the October 21, 2022 and April 24, 2023 towings in the fourth cause of action in the *Dayton I* FAC and first cause of action in the *Dayton II* Complaint, and denies Plaintiff's motion for summary judgment as to the same.

### 2.    Plaintiff's Personal Property Seizure Claims

Defendants argue that the Individual Defendants are also entitled to qualified immunity on Plaintiff's § 1983 claims for the seizure of his personal property because

they acted in accordance with the government's interest in enforcing the municipal code and keeping public sidewalks clean. Defs. MSJ at 21. Defendants argue that *Lavan* does not create a clearly established right because, unlike in *Lavan*, Plaintiff's property was not destroyed indiscriminately, Plaintiff had notice of the impending seizure and disposal of his property, and Plaintiff could have relocated the exposed property into his motorhome. *Id.* In opposition, Plaintiff responds that this case clearly falls under the purview of *Lavan*. Pl. Opp'n at 10-12, 13. As mentioned above, the Court construes Plaintiff's personal property seizure claims as being raised against only Defendants Officer Strickland and Officer Piro in their personal capacities.

Here, where there are disputed facts, for the purposes of the qualified immunity analysis, the Court must assume the facts as alleged by Plaintiff. *See Blankenhorn*, 485 F.3d at 477. Assuming Plaintiff's characterization of the facts, Defendants Officer Strickland and Officer Piro destroyed property that had value to Plaintiff, Defendants provided no notice that they would collect and dispose of Plaintiff's personal property, Plaintiff had not abandoned his property, and Plaintiff had no means of relocating it because he was homeless and used his motorhome for daily living. These facts would demonstrate that Defendants Officer Strickland and Officer Piro violated Plaintiff's personal property rights under the Fourth Amendment as clearly established in *Lavan*, making qualified immunity inappropriate. *See Warkentine v. Soria*, 152 F. Supp. 3d 1269 (E.D. Cal. 2016) (holding qualified immunity does not apply to warrantless seizures of personal property on plaintiffs' vacant land); *Cupp v. Smith*, 2022 WL 541177, at *5 (N.D. Cal. Feb. 23, 2022) (denying qualified immunity where triable issues of fact exist as to whether defendant violated plaintiff's Fourth Amendment rights).

Accordingly, Defendants Officer Strickland and Officer Piro are not entitled to qualified immunity as to Plaintiff's personal property seizure claims. The Court therefore denies both Plaintiff's motion and Defendant's cross-motion as to Plaintiff's personal property seizure claims in the sixth cause of action in the *Dayton I* FAC and Plaintiff's second cause of action in the *Dayton II* Complaint.

**IV.    CONCLUSION**

In summary, as set forth above, this action shall proceed solely as to Plaintiff's claims under 42 U.S.C. § 1983 that the disposal of Plaintiff's personal property incident to the towing of his motorhome on October 21, 2022 and on April 24, 2023 violated his Fourth Amendment rights. Accordingly, Plaintiff's sixth cause of action in *Dayton I* for Fourth Amendment personal property seizure shall proceed against Defendants Officer Strickland and Officer Piro in their personal capacities; and Plaintiff's second cause of action in *Dayton II* for Fourth Amendment personal property seizure shall proceed against Defendants Officer Strickland and Officer Piro in their personal capacities. Summary judgment is granted for Defendants on all other claims. No claims remain against Defendants City of Fairfield, Officer Richard Mroz, Officer Robert Ramirez-Kirgan, Officer Jimmie Williams, or Chief of Police Dan Marshall.

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (ECF No. 29) is DENIED; and

2.    Defendants' cross-motion for summary judgment (ECF No. 30) is GRANTED IN PART and DENIED IN PART as follows:

   a.    Summary judgment is GRANTED for Defendants as to Plaintiff's first (false arrest), second (excessive force), third (conspiracy to commit false arrest), fourth (unlawful removal of vehicles), and fifth (conspiracy to unlawfully remove vehicles) causes of action in *Dayton I*;

   b.    Summary judgment is DENIED as to Plaintiff's sixth cause of action in *Dayton I* (unlawful seizure of personal property);

   c.    Summary judgement is GRANTED for Defendants as to Plaintiff's first cause of action (unlawful removal of vehicles) and third cause of action (conspiracy to unlawfully remove vehicles) in *Dayton II*;

   d.    Summary judgment is DENIED as to Plaintiff's second cause of action in *Dayton II* (unlawful seizure of personal property); and

35

      e.      Summary judgment is GRANTED for Defendant City of Fairfield on all claims brought against Defendant in *Dayton I* and *Dayton II*.

3.      This action proceeds on the following remaining claims:

      a.      Plaintiff's personal property seizure claim in the sixth cause of action in *Dayton I*, arising out of the October 2022 towing incident, against Defendants Officer Strickland and Officer Piro in their personal capacities; and

      b.      Plaintiff's personal property seizure claim in the second cause of action in *Dayton II*, arising out of the April 2023 incident, against Defendants Officer Strickland and Officer Piro in their personal capacities.

Dated:  June 25, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

8, dayt.1170.24

36